Good morning, Your Honors. My name is Michael Stahl. I represent Mr. Alexander Ignatiev, and I would like to first apologize to Judge Kleinfeld if my brief read like a historical Russian novel. He was concerned when he said that yesterday. Sometimes you have to get to the facts. This case is an ineffective assistance of counsel case. Mr. Ignatiev was represented. He entered the country in 1992 and filed for asylum within his authorized stay, and he was interviewed for asylum six years later in 1998. Reached an agreement and referred to an immigration judge and placed into removal proceedings. He at that time obtained representation by an attorney, Mr. Zareya, and Mr. Zareya represented him at the hearing. They lost the hearing. Mr. Zareya attempted to appeal the decision with Mr. Ignatiev and later failed to file a timely brief, and the Board of Immigration Appeals issued a summary dismissal of the appeal for failure to file a timely brief. Mr. Ignatiev learned about this when the decision was made sometime in 2002 and sought further advice from another counsel, not Mr. Zareya, of course. He retained me and I filed a motion to reopen and raise the ineffective assistance of counsel claim. The Board... There's no Lozada compliance, correct? That's the decision by the Board. There was no bar complaint filed. That's what I mean. I think Lozada says that you can't use ineffective assistance unless you file a grievance. Well, that's what the... There are three prongs on Lozada, and there are Ninth Circuit cases which say that in all ineffective assistance of counsel claims, it is not necessary to file to strictly adhere to the Lozada criteria because the purposes may be served. Is the case... And in this case, that is clear. When you look at the case, you can see that the attorney failed to provide effective assistance. He didn't file a brief, and it's tremendously clear from the record. I never know about that. What has always struck me about the Lozada compliance is you find out what the lawyer has to say. Sometimes it can be something like I told the person I would represent them and file a brief if they came in and told me their story and brought me whatever papers they had and paid me the amount of my retainer, and they never came back, so I never filed anything. I agree, and that's one of the purposes of Lozada. It gets you into the attorney-client relationship and what transpired between them. In this case, that's satisfied because Mr. Zoraia submitted a motion to accept a late-filed brief, and he called it a certificate of counsel under penalty of perjury where he said, I miscalendered the date. I miscalendered the due date. He told me when I asked him what happened. I know him from years ago, and I tried to engage him and get the file and get his help if I could get it. He told me he mailed it by the due date. I didn't know what he did. I didn't even know about this affidavit until I got the certified administrative record. There were pieces of the file coming in. I made a judgment that I wasn't going to participate in filing a bar complaint until I knew what the facts were. I didn't want to make allegations that I couldn't support with facts later. During this period, Mr. Ignatieff was arrested. He was interrogated. He was sequestered. He was shipped to Arizona. I filed an administrative request, an I-244 request, and he was sent to I-246 to keep him, to administrative stay of removal, a request for an administrative removal to the local district director. I was fighting to keep him in the country because if he's gone, you know, at that point, what rights does he have? What remedies does he have? His whole case is de facto moot, really. Well, let's assume that there is substantial compliance with Lazada and go to the bottom of his asylum claim. Is his asylum claim with merit? His asylum claim. The claim, I don't believe, I don't know that we have to decide in this case here today or in this decision whether his asylum claim has merit and whether he gets asylum or not. Well, how would he be prejudiced by the ineffective, by the deficient performance of his counsel if his claim doesn't have merit? Well, first of all, he didn't get the benefit of having counsel. He wanted counsel, and in the Ituribarria case, I think it's called, it talks about Ituribarria, 321F3, 889. It's a 9th Circuit, 2003 case. It's at page 21, the full site is at page 21 in my brief, the brief. And in Iavorsky, those cases talk about when you have ineffective assistance of counsel, you're essentially deprived of counsel, and it's a due process violation. I think on the prejudice, I don't know if Judge Gordlaw and I are thinking about the same thing, but what I'm thinking about is if you get to the merits, it's hard to see what claim he had that would have been effective had his lawyer been prompt. The Russian Orthodox part of it, because of the changing country conditions, apparently the Russian Orthodox don't have a problem there anymore. Well, that... And the political part, there doesn't seem to be a political part. I think a KGB officer had an affair with his wife, and that caused, of course, personal problems, not political opinions. That's a portion, and from that point, you get into all kinds of issues about mixed motives and acts he had taken. He had requested restitution of property, private property. His ancestors had been involved in the Russian Orthodox Church, had property confiscated and had been murdered by the Stalin regime. He had requested the rehabilitation and return of the private property to his family. And the immigration judge found that was not a political act to do that, and I can't conceive of how requesting a return of private property from a communist regime could not be considered a political act. Well, it's not a communist regime anymore. The country was in flux. The country was in flux. The country conditions are tremendously important. That's the other prong of this. He didn't get a fair hearing of the context of his asylum claim. He came into the country in 92 due to events that occurred right at the collapse of the Soviet Union. The country was in flux. Events in 91, 90, 89. He comes into the country in 92 for six years. He's not given an interview for six years. And then, I want to point this out, when he gets his interview, the asylum officer, which in the record, way deep in the administrative record, in the asylum officer's findings, they find that the asylum officer finds that country conditions have changed. Later, the immigration judge says the same thing. In his decision, at page 119 of the record, he says, the primary problem the court sees with this application is first, the dramatic change in circumstances in Russia since the respondent departed, and secondly, and then he talks about other things, but relying on changes of circumstances raises a whole line of cases about the finding that, okay, these people knew he had suffered persecution, and instead of meeting the standard of rebutting the established, well-founded fear, they avoided it. They avoided it. They're relying on changed country conditions, and when you do that, there's a line of cases in the Ninth Circuit that says that they must rebut a presumption, and change past persecution will give rise to a presumption of future persecution, and they're relying on changed country conditions, but they don't address that. Thank you, counsel. That light turned red a while ago. Pardon me? Your light turned red a while ago. I'm sorry. I didn't notice. Thank you, counsel. Thank you. Good morning, Your Honor. Terry Skadron, again, for the respondent. I'd like to begin by clarifying what is before the Court in this case on this petition for review, and the Board's March 2002 decision dismissing Mr. Gnadiev's administrative appeal for failure to file a promise brief is not what is before the Court. The Court is confronted with a very narrow question of whether the motion to the Board properly dismissed Mr. Gnadiev's motion to reopen because it was untimely, that is, it was not filed within the 90-day period. Now, it clearly was filed long after the 90-day period expired, and there are only two ways that that motion could be deemed timely. First, whether if the equitable tolling rule that this Court has recognized in cases such as Iturribia applies, or if the motion was supported by evidence of changed country conditions bearing on Gnadiev's asylum claim. We submit that with regard to equitable tolling, Mr. Gnadiev didn't just miss the 90-day deadline by a couple of days. He did not even retain counsel for nine months after the Board's March 2002 decision, and the motion to reopen was not filed until 11 months after that decision. There is nothing at all in the record indicating that Mr. Zoria did not inform Mr. Gnadiev of the Board's March 2002 decision. The case that petitioners principally relies upon on the equitable tolling issue, Iturribia, is readily distinguishable from the situation here. In that case, the Board had dismissed the appeal in October 2000 within a week. By October 11th, the petitioner retained new counsel. New counsel diligently pursued the evidence he needed to file a motion to reopen, and then ended up filing it six days late. There's nothing like the nine-month delay in retaining counsel that we have here. Here it appears that Mr. Gnadiev waited until after October 2002 when he had an approved immigrant visa petition, and then his primary basis for moving to reopen was to apply for adjustment of status, a new form of relief for which he could not have qualified as of his original hearing. The issue of Mr. Zoria's performance in the administrative appeal really is more of a side issue. Even if you're to allege ineffective assistance of your hearing counsel, you still have to do that within the three-month period allowed by the statute for a motion to reopen. And here, that period had tripled before he even looked for new counsel. Now the period after he retained counsel, you could explain, I mean I'm not faulting Mr. Stell for taking some time to see what the basis for a motion to reopen may be. I recognize that there can be some difficulties getting the full file, but by the time Mr. Stell saw this case, the time had long since expired and there's no explanation whatsoever in the record for that lengthy delay. Now the other means of filing beyond the 90-day period, of course, is a motion to reopen based on changed country conditions. Those changed conditions must bear materially upon the asylum claim. And here, all that is presented in the motion to reopen was the petitioner appended the most recent State Department country report on Russia without explanation as to how it bore on the case, how it now rendered Mr. Ignatieff eligible for asylum. You really have to comb through that to find any nexus whatsoever to the case. And all there is is about two sentences relating to restitution of church property, and that's not even I'm confused about something on this restitution of church property. If it's church property, I don't get why there would be a personal claim by Ignatieff to own it. But it may be that I just don't understand the nature of ownership in church property. I don't know that the church property has anything to do with Mr. Ignatieff's claim. It seems like the church would get restitution of church property. Ignatieff would get restitution of Ignatieff property. I would think that would be the case. Now, there's a suggestion from the original asylum hearing that Mr. Ignatieff's grandfather was, you know, he was Russian Orthodox and that his property was seized. But that was not, there's nothing indicating that was part of a seizure of church property. Does the church official hold the property as trustee for the church or something? Your Honor, I'm sorry, but I don't know. And I don't think there's anything in the record that explains that. And there would have to be some sort of connection there to have this State Department report have any bearing whatsoever on his claim. The merits of the original asylum order are not before the court, but we will note that it seems like a fairly solid decision that there was no proof of any nexus between the recalcitrance in returning this, what appears to be private property and any ground protected by the act. Certainly though, because that's not the order that's before the court, the court is confronted only with a very narrow question of changed country conditions. There is nothing that Mr. Ignatieff appended to his motion to reopen that would compel the finding that he now has a meritorious or prima facie case for asylum in the United States. So the court need not even reach the issue of Lozada compliance here because the central issue really is one of timeliness. Lozada would, that issue would be squarely before the court if the motion to reopen was filed within the 90 day period and then the issue would be whether he was hampered by ineffective assistance of counsel. But because that claim has to be raised within 90 days, unless equitable tolling or something else applies, you don't even get there. But since the court had some questions previously regarding Lozada compliance, we will note that Mr. Ignatieff did not, even with his late motion to reopen, comply with Lozada. That would be an independent basis for denying the petition for review. First, there is nothing, the first Lozada requirement is not met here because there is nothing indicating the scope of Mr. Zuria's representation agreement with Mr. Ignatieff. Yet it does appear apparent that he agreed to represent him in his administrative appeal, but our issue here again is the motion to reopen, there is nothing indicating that his representation extended beyond that appeal. Arguably counsel was informed of the allegations against him by Mr. Stel, but again there is no bar complaint in this case and the only explanation for a lack of a bar complaint was Mr. Stel's suggestion that they needed further investigation to see whether the conduct was serious enough to warrant a bar complaint. The reason why Lozada has that requirement is to ensure that claims of ineffective assistance of counsel in immigration proceedings are serious enough to bring them before the agency. For all of these reasons, if the court has no further questions, we ask that you affirm the petition.
judges: Hall, Kleinfeld, Wardlaw